IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MID ATLANTIC BLENDED            )
PRODUCTS, INC.                  )
                                )
            Plaintiff,          )
                                )
        v.                      )   1:05CV00571
                                )
MONOTECH INTERNATIONAL, INC.,   )
a Nevada Corporation, and       )
JEFFREY SHANKMAN,               )
                                )
            Defendants.         )

## MEMORANDUM OPINION AND RECOMMENDATION NO. 2
## OF MAGISTRATE JUDGE ELIASON

This case comes before the Court on Plaintiff's motions for summary judgment against Defendants MonoTech International, Inc. ("MonoTech") and its Chief Executive Officer, Jeffrey Shankman ("Shankman"). Plaintiff sued both Defendants for fraud and unfair and deceptive trade practices (Counts I and II of the complaint) and brought additional breach of contract and *quantum meruit* claims against MonoTech alone. All of these claims center on the sale of Plaintiff's concrete blending facility to MonoTech following prolonged negotiations between the two companies. At this time, Plaintiff only seeks summary judgment as to Counts I and II.

The facts are set out in this Court's earlier recommendation, filed on May 9, 2006:

> According to the amended complaint, in early 2003, plaintiff and Monotech entered a lease for all of plaintiff's assets. The primary asset was a concrete blending plant in Hoke County, North Carolina. This lease expired on July 15, 2003, but Monotech held over, apparently with plaintiff's acquiescence, when Shankman

told plaintiff that it intended to purchase plaintiff's assets, but just needed more time to make arrangements. Monotech allegedly did not pay rent during the ensuing delay. Plaintiff claims that it and Lally's [the owner of Plaintiff] finances deteriorated as time passed and Shankman allegedly made further promises about an "imminent" closing. Matters reached a crisis point by December of 2003 and, on December 11, 2003, plaintiff told Monotech that it intended to file a summary ejectment. Plaintiff claims that Shankman faxed a signed copy of an Asset Purchase Agreement to Monotech's local counsel while plaintiff's attorney was driving to file the ejectment.

The agreement set closing on the asset purchase for not later than December 31, 2003. Plaintiff was to be paid $800,000 for the plant and $200,000 for an agreement not to compete. The original deal called for $200,000 to be paid with a promissory note from Monotech and secured by the plant. However, prior to closing, Shankman asked for more time so that Monotech could assign plaintiff's assets to a third party, Incline Materials, LLC, just after closing. Also, because this removed the proposed collateral for the promissory note from Monotech's possession, Shankman asked to substitute six unimproved lots of real estate that Monotech owned in Hoke County.

Plaintiff, in desperate financial condition by this time, agreed and the deal was eventually closed on February 20, 2005. Plaintiff's plant was transferred to Incline and plaintiff received $800,000 and the $200,000 promissory note signed by Shankman on Monotech's behalf. The note, executed on February 11, 2004, was secured by a deed of trust on the six unimproved lots of land. It called for an interest rate of 7% with a balloon payment of $200,000 due on March 31, 2004. The interest rate rose to 8% in the event of a default.

Plaintiff states that Monotech never made a payment on the note and defaulted on March 31, 2004. Plaintiff foreclosed on the unimproved lots and sold them, netting $10,823.08 after expenses. Plaintiff then applied this to the balance on the note, leaving $199,517.14 due as of October 12, 2004.

> Plaintiff theorizes that the goal of Shankman's conduct in delaying closing while Monotech was not paying rent was to force plaintiff into a foreclosure with its lenders or bankruptcy to lower the prices that Monotech would pay for plaintiff's assets. Eventually forced to act by the summary ejectment, Shankman finally signed the asset purchase agreement, but then delayed further. Plaintiff claims that he eventually signed the promissory note knowing that Monotech had no intent to pay, despite having the assets to do so.

<u>Mid-Atlantic Blended Products, Inc. v. Monotech Intern., Inc.</u>, 2006 WL 2014714, at *1-2 (M.D.N.C. 2006). To summarize, Plaintiff alleges a comprehensive scheme in which Shankman, acting for Monotech, took advantage of Plaintiff's tenuous financial condition to drag out contract negotiations in order to lower the selling price of the plant and, in addition, made a promise for a non-compete agreement which they never intended to keep. The sole issue now before the Court is whether the evidence underlying this "comprehensive scheme" demonstrates that Plaintiff's claims of fraud and unfair and deceptive trade practices ("UDTP"), not just can, but must succeed as a matter of law.

**Summary Judgment Standard**

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must view the evidence in a light most favorable to the non-moving

party. Pachaly v. City of Lynchburg, 897 F.2d 723, 725 (4th Cir. 1990). However, neither party may rest on conclusory statements; each must provide specific facts supporting their claims, particularly when that party has the burden of proof on an issue. Id. A mere scintilla of evidence will not suffice. Rather, there must be enough evidence for a jury to render a verdict in favor of the party making a claim. Sibley v. Lutheran Hosp. of Maryland, Inc., 871 F.2d 479, 486 (4th Cir. 1989).

Where, as here, the summary judgment movant also bears the burden of proof at trial, that party "faces a challenge more difficult than otherwise," because it "must do more than put the issue into genuine doubt; indeed, [it] must remove genuine doubt from the issue altogether." Hoover Color Corp. v. Bayer Corp., 199 F.3d 160, 164 (4th Cir. 1999)(quoting Alan's of Atlanta, Inc. v. Minolta Corp., 903 F.2d 1414, 1425 (11th Cir. 1990)). For this reason, summary judgment is not often granted under such circumstances. Turner v. Ferguson, 149 F.3d 821, 824 (8th Cir. 1998).[1] Plaintiff faces an even greater barrier to summary judgment because proving fraud requires the proof of a person's state of mind, which often can be a very difficult thing to do absent admission from the party or blatant outward actions from

---

[1] One rare contrary example would be where "the legal construction of the contract terms mandates an entry of judgment based on the undisputed facts." Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 231 F. Supp. 2d 942, 946 (S.D. Iowa 2002)(emphasis added).

-4-

which intent may be inferred. See generally Erskine v. Chevrolet Motors Co., 185 N.C. 479, 492, 117 S.E. 706, 712 (1923). For this additional reason, summary judgment is rarely granted when a party has the burden of proving intent, as Plaintiff does here. Hoover Color Corp. v. Bayer Corp., 199 F.3d 160, 164 (4th Cir. 1999); Turner, 149 F.3d at 824; Deleu v. Scaife, 775 F. Supp. 712, 716 (S.D.N.Y. 1991). With these standards in mind, the Court proceeds to Plaintiff's claims.

## Discussion

The Court will begin with Plaintiff's request for summary judgment concerning its allegations of fraud. Under North Carolina law, a plaintiff must show the following to prove actionable fraud: "(1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) which results in damage to the injured party." Trull v. Cent. Carolina Bank & Trust Co., 117 N.C. App. 220, 224, 450 S.E.2d 542, 545 (1994). The third element of this test, which requires proof of intent, provides the first great hurdle to Plaintiff's claim. As indicated previously, absent admission from a party, summary judgment concerning intent will be rarely appropriate. In the normal situation, such as here, intent to deceive, "is always a question for the jury, and to determine whether the intent was fraudulent the jury have necessarily to look

to the circumstances connected with the transaction or those immediately preceding or following it." Erskine, 185 N.C. at 492, 117 S.E. at 713 (1923)(citation omitted). Intent, like unconscionability and other similarly intent-based issues, is necessarily "a question of judgment and degree, the sort of question which is normally not clear enough to be decided as a matter of law." Turner, 149 F.3d at 824. Thus, Plaintiff's motion for summary judgment must fail unless it can fit its case into one of the rare exceptions to granting such a motion when the issue involves intent.

Not only does Plaintiff fail to show it comes within such an exception, it fails to produce any facts to support its conclusory allegation that Shankman never intended to make payments of the promissory note. Jay Lally mentions this issue of Shankman's intent twice in his affidavit, but he simply offers his opinion in doing so. (See Docket No. 61, App. A.) Lally's opinion is not proof of Defendants' intent. Plaintiff's brief claims Defendants' intent can be inferred from Defendants' "comprehensive scheme" to "put the plaintiff in an impaired bargaining position during the falsehood riddled 'negotiations.'"[2] (Pl.'s Br. 8.) This hardly constitutes overwhelming proof that Defendants never intended to

---

[2]The parties' earlier negotiations are irrelevant, since the amended complaint sets forth Defendants' false representation to pay the promissory note as the sole basis for its fraud claim.

pay for the non-compete agreement.  In fact, Plaintiff never mentions Defendants' intention to make payments, or lack thereof, nor does it refer to any relevant evidence or cases.  In short, there is no actual evidence of Defendants' intent at the time of the making of the contract.  It would seem that Plaintiff is relying on the proposition that if a person fails to pay, then it can be assumed they never intended to pay at the time of the making of the contract.  Such unsupported suppositions are wholly insufficient to support summary judgment for Plaintiff.

While the above discussion shows that Plaintiff's motion for summary judgment on its fraud claim must be denied, the Court would be remiss not to mention a possibly bigger issue then the present failure to meet the stringent summary judgment standards.  The problem is that the representation underlying Plaintiff's fraud claim is premised on a clause in a contract and the breach of that clause.  In other words, Plaintiff is attempting to make the breach of contract the basis of its tort claim.  However, the remedy for breach of contract normally lies in contract law, not in tort.  See North Carolina Ports Authority v. Lloyd A. Fry Roofing Co., 294 73, 81, 240 S.E. 345, 350 (1978).

Notwithstanding, there are situations where a tort is intertwined with the making or breach of a contract.  The Second Circuit has encapsulated the situations where it would be

appropriate (using New York law) to bring a tort claim when a contract is also involved. A plaintiff must,

> '(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.'

C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc., 419 F. Supp. 2d 419, 430 (S.D.N.Y. 2005)(quoting Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996)).

North Carolina recognizes these exceptions, albeit using the more general description that "[o]nly where a breach of contract also constitutes an 'independent tort' may tort actions be pursued" as well. Strum v. Exxon Co., U.S.A., 15 F.3d 327, 330 (4th Cir. 1994). The first situation is where there is personal injury or property damage caused by negligent or willful acts or omissions occurring in the course of the performance of the contract. North Carolina State Ports Authority, 294 N.C. at 82, 240 S.E.2d at 350. However, the mere failure to perform a contract does not give rise to a tort action. Id., 294 N.C. at 83, 240 S.E.2d at 351.

Another situation arises when there is fraud and deceit connected to the contract, or accompanied by aggravating conduct, such as fraud, malice, recklessness, etc. Dailey v. Integon

General Ins. Corp., 75 N.C. App. 387, 331 S.E.2d 148, 153-154 (1985); Newton v. Standard Fire Ins. Co., 291 N.C. 105, 229 S.E.2d 297, 301 (1976). This may arise, for example, because of an insurance company's bad faith refusal to settle a policy claim. Id. Another example would be fraud in the inducement to making a contract. Strum, 15 F.3d at 331; Godfrey v. Res-Care, Inc., 165 N.C. App. 68, 78, 598 S.E.2d 396, 403 (2004)(fraud which induces contract separate and distinct from contract). In that situation, a plaintiff typically must elect between repudiating or rescinding the contract and recovering his consideration or affirming the contract, pursuing the fraud claim, and recovering the difference between what was promised and what was received. Godfrey, 165 N.C. App. at 79, 598 S.E.2d at 404; Taylor v. Triangle Porsche-Audi, Inc., 27 N.C. App. 711, 717, 220 S.E.2d 806, 811 (1975)(citing Bruton v. Bland, 260 N.C. 429, 430, 132 S.E.2d 910, 911 (1963)). Treble damages in conjunction with a UDTP claim are not generally available in the first situation, but are when based on an underlying fraud claim. Id.; see also Stone v. Paradise Park Homes, Inc., 37 N.C. App. 97, 245 S.E.2d 801 (1978)(only damages attributable to defendant's fraudulent acts may be trebled).

In the present case, Plaintiff fails to point to any evidence of an independent fraudulent action which would remove the present action from the realm of contract and place it in the fault-based

realm of tort.  With much imagination, the complaint could be read to suggest that Plaintiff perhaps alleges fraudulent inducement. However, Plaintiff does not make any attempt to describe how the value of the non-compete clause has been affected by Defendants' alleged fraud.  See Stanford v. Owens, 46 N.C. App. 388, 265 S.E.2d 617 (1980)(must show damage arose as a result of the misrepresentations); see also Mosley & Mosley Builders, Inc. v. Landin, Ltd., 97 N.C. App. 511, 517, 389 S.E.2d 576, 579 (1990)(UDTP claim).

Plaintiff's purported fraud claim, like the fraudulent inducement claim in Strum, also "lacks both factual and legal support" as to other elements of actionable fraud.  15 F.3d at 331. Generally, a plaintiff must offer external facts which prove that the speaker spoke falsely when stating his intent.  Such evidence most often includes the speaker's contemporaneous statements to others contradicting his manifested intent or objective facts showing that his intent could not have been truthful when made. See, e.g., Leftwich v. Gaines, 134 N.C. App. 502, 509-510, 521 S.E.2d 717, 723 (1999)(defendant's dealings with a third party contradicted his statements to plaintiff).  The case at hand sets forth no such evidence.  Plaintiff only shows Shankman, on behalf of MonoTech, delayed closings, substituted collateral at the last

-10-

minute, and did not pay the note. This is insufficient to support a separate tort action for fraudulent inducement.

Plaintiff may not be granted summary judgment on its UDTP claim for the same reasons discussed concerning the fraud claim. Plaintiff has the burden of proof. It relies on its fraud claim to support its UDTP claim, and it fails to show it is entitled to judgment as a matter of law on the sketchy facts. Furthermore, the UDTP claim suffers from the same fundamental flaw as the fraud claim.

The North Carolina courts have also "repeatedly held that 'a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the UTPA,] N.C.G.S. § 75-1.1.'" Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (1998)(quoting Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992)). Rather, a plaintiff must show "substantial aggravating circumstances" in additional breach in order to support such a claim. Id. Thus, Plaintiff's burden in the present case is two-fold. To prove that Defendants' acts were unfair and deceptive, Plaintiff must (1) provide a basis for its claim independent from breach of contract or fraudulent inducement, and (2) provide sufficient factual and legal support to prove beyond genuine doubt

that this basis is substantially aggravating within the meaning of N.C.G.S. § 75-1.1.

To the extent Plaintiff relies on its fraud claim to support its UDTP claim, it suffers from the same deficiencies. The complaint fails to allege any other basis for its UDTP claim, and Plaintiff's brief does little better. It merely refers to Shankman's "comprehensive scheme to cheat Mid Atlantic" and his "deceptive" correspondence with Lally in general terms, offering no proof as to which statements are deceptive, aside from the contract was not performed. (See Docket No. 62, p. 12.) And, as noted above, Plaintiff must show the damage was the proximate cause of the deception. Mosley & Mosley, supra. As with Plaintiff's fraud claim, this total lack of specific, supporting evidence simply cannot support a conclusion that Defendants' actions were unfair and deceptive as a matter of law.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motions for summary judgment against Defendants Monotech and Shankman (docket nos. 61 and 63) be denied.

_____
**United States Magistrate Judge**

June 3, 2008